UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CARDIOVASCULAR BIOTHERAPEUTICS, INC., | Case No. 2:14-CV-1965 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| JOHN W. JACOBS, | |
| Defendant(s). | |

Presently before the court is defendant John W. Jacobs's motion to dismiss and compel arbitration. (Doc. # 24). Plaintiff Cardiovascular Biotherapeutics, Inc.'s ("Cardio") filed a response (doc. # 41), and defendant filed a reply (doc. # 45).

Also before the court is plaintiff's application for preliminary injunction and memorandum in support. (Doc. # 2). Defendant filed a response (doc. # 32), and plaintiff filed a reply (doc. # 42).[1]

I.  **Background**

This case involves an alleged breach of contract and dissemination of confidential proprietary information. Plaintiff Cardio is a biopharmaceutical company developing protein drug candidates to address diseases that result from lack of blood flow to a tissue or organ such as diabetic foot ulcers, severe coronary microvascular disease and peripheral artery diseases. (*See*

---

[1] The court notes that plaintiff has also filed a supplemental motion for preliminary injunction (doc. # 49) and motion for leave to file supplemental motion for preliminary injunction and supporting memorandum (doc. # 55), which are not yet ripe for this court's consideration. Defendant filed a motion to strike plaintiff's supplemental motion for preliminary injunction arguing that plaintiff's supplemental motion was improperly filed and should not be considered by the court. (Doc. # 53). Plaintiff filed a response (doc. # 54), and the date for defendant to file a reply has not yet passed. Because the court will grant defendant's motion to dismiss and compel arbitration, the court will dismiss each of these motions as moot.

**James C. Mahan**
**U.S. District Judge**

doc. # 2). Defendant John W. Jacobs was a Chief Scientific Officer, Chief Operating Officer, and consultant for Cardio. (*See id.*).

During the course of his employment with Cardio, Jacobs had access to and possession of valuable and confidential proprietary information belonging to Cardio. (*See* doc. # 2). Jacobs signed a number of employee agreements imposing obligations on him to maintain the confidentiality of all information he gained during the time of his employment. (*See id.*). Jacobs also agreed to not use Cardio's proprietary information for any purpose unconnected to his employment with Cardio and that all gain or profit from the proprietary information would belong to Cardio. (*See id.*).

On September 18, 2014, following a lengthy shareholder fight for control of the Cardio's board of directors, Cardio terminated Jacobs from all of his positions held as an employee, consultant, and officer of Cardio. (*See id.*). Immediately following his termination, Cardio made a demand on Jacobs to comply with his post-employment obligations as outlined in the employee agreements. (*See id.*). Cardio's demand on Jacobs included that Jacobs immediately disclose in writing to Cardio the details of any confidential information Jacob's had devised while employed with Cardio, return all confidential information and copies belonging to Cardio, provide a list of names and addresses of people with whom Jacobs had shared any confidential information, and stop any use of confidential information that violates his employee agreements. (*See id.*).

On November 25, 2014, Cardio filed a complaint alleging breach of contract, violation of copyright laws, and actual and/or threatened misappropriation of trade secrets by defendant Jacobs. (Doc. # 10). Cardio alleges that Jacobs has not returned their confidential information and has failed to comply with his post-employment obligations. Additionally, Cardio alleges that Jacobs has used Cardio proprietary information to start a new, competing company, Zhittya Regeneragive Medicine ("Zhittya"), and that Zhittya has published a "white paper" on the internet promoting Zhittya's biopharmaceutical business in direct competition with Cardio.

Cardio requests the instant preliminary injunction to prevent Jacobs from continuing to violate his post-employment obligations under the employee agreements, and also to prevent Jacobs' continuing breach of Cardio's copyright protected works. Jacobs contends, however, that

**James C. Mahan
U.S. District Judge**

- 2 -

Cardio's motion for preliminary injunction is improperly before this court. According to Jacobs, the relevant employee agreement – a March 1, 2010 consulting agreement between Cardio and Jacobs – contains a broad form mandatory arbitration provision. Accordingly, Jacobs has filed the instant motion to dismiss the complaint and compel arbitration.

## II.   Legal Standards

### A. Arbitrability

Federal substantive law governs the question of arbitrability. *See Simula, Inc. v. Autoliv., Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983); *Republic of Nicaragua v. Standard Fruit Co.,* 937 F.2d 469, 474-75 (9th Cir. 1991). Because the consulting agreement at issue is a "contract evidencing a transaction involving commerce," it is subject to the Federal Arbitration Act. *See* 9 U.S.C. § 2; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The Federal Arbitration Act ("FAA") reflects Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the commerce clause. *See Republic of Nicaragua,* 937 F.2d at 475 (citing *Perry v. Thomas,* 482 U.S. 483, 490 (1987)). The FAA embodies a clear federal policy in favor of arbitration. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula*, 175 F.3d at 719 *(*quoting *Moses H. Cone*, 460 U.S. at 24–25).

The standard for demonstrating arbitrability is not high. *Simula*, 175 F.3d at 719. The Supreme Court has held that the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. *See Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 218 (1985); *Simila*, 175 F.3d at 719. Such agreements are to be rigorously enforced. *Simula*, 175 F.3d at 719; *see also Dean Witter*, 470 U.S. at 221.

Despite the federal policy favoring arbitration, arbitration is a "matter of contract" and no party may be required to arbitrate "any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) (quoting *United Steelworkers,* 363 U.S. at 582). When determining whether a party should be compelled to arbitrate claims: the court must engage

in a two-step process. *Chiron*, 207 F.3d at 1130 (9th Cir. 2000). The court must determine: (1) whether a valid agreement to arbitrate exists, and if it does; (2) whether the agreement encompasses the dispute at issue. *Id.*

  B. Preliminary Injunction

Under Federal Rule of Civil Procedure 65, a court may issue a preliminary injunction when the moving party provides specific facts showing that immediate and irreparable injury, loss, or damage will result before the adverse party's opposition to a motion for preliminary injunction can be heard. Fed. R. Civ. P. 65.

The Supreme Court has stated that courts must consider the following elements in determining whether to issue a preliminary injunction: (1) a likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008). The test is conjunctive, meaning the party seeking the injunction must satisfy each element.

Additionally, post-*Winter*, the Ninth Circuit has maintained its serious question and sliding scale test. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. "Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (quotations omitted).

**III. Discussion**

Before reviewing the merits of plaintiff's motion for preliminary injunction, the court must determine whether it has jurisdiction over the dispute. Therefore, the court will first consider defendant Jacobs' motion to dismiss and compel arbitration.

**James C. Mahan**
**U.S. District Judge**

- 4 -

The parties do not challenge the validity of the agreement. Therefore, the FAA restricts the court's review to deciding only whether the dispute is arbitrable, that is, whether it falls within the scope of the parties' agreement to arbitrate. *Chiron*, 207 F.3d at 1131.

The parties' application of the arbitration clause to "any dispute arising out of this Agreement" is broad and far reaching. *See Chiron*, 207 F.3d at 1131. This statement, alone, would leave little doubt that the instant dispute is subject to arbitration. *See id.* The question here, however, centers on whether additional language in the dispute resolution paragraph of the parties' consulting agreement allows either party to bypass arbitration and proceed directly to this court to obtain equitable or injunctive relief.

Paragraph 21 of the parties' consulting agreement reads:

> The parties shall attempt in good faith to resolve any dispute arising out of this Agreement through good faith negotiation. Any dispute which has not been resolved by negotiation within a 30 day period shall be settled by binding arbitration in Clark County, Nevada . . . . The arbitrator shall render an award and a written, reasoned opinion in support thereof. The arbitrator's award shall by final and judgment upon the award may be entered in any court having jurisdiction thereof. The arbitrator may, subject to any limitations placed on remedies by the terms of this Agreement, grant any relief authorized by law, including but not limited to, equitable relief, declaratory relief, and damages including punitive damages. . . . If any judicial proceeding is required to enforce an arbitration ruling or to obtain equitable or injunctive relief, the parties hereby consent to the exclusive jurisdiction and venue of the U.S. District Court for the District of Nevada for any such proceeding.

(Doc. #10-1).

Jacobs asserts that, given that the arbitration clause is broad and far reaching, all of Cardio's causes of action and prayers for relief should be resolved in arbitration. Jacobs cites non-controlling authority from this district, *Hillgen-Ruiz v. TLC Casino Enterprises, Inc.*, case no. 2:14-cv-437-APG-VCF, 2014 WL 5341676 (D. Nev. 2014). *Hillgen-Ruiz*, however, is not helpful for this court's determination of whether a carve-out exists for parties to pursue injunctive or equitable relief before the court.

The court in *Hillgen-Ruiz* found that an arbitration agreement encompassed an employee's employment discrimination action because the arbitration agreement expressly stated that it applied to "all disputes that may arise out of the employment context." *Hillgen-Ruiz*, 2014 WL

James C. Mahan
U.S. District Judge

- 5 -

1   5341676 at *8. In *Hillgen-Ruiz*, however, the parties did not dispute that the employment
2   discrimination action was subject to arbitration; the issue was whether the arbitration agreement
3   was valid. *See id.* Additionally, the arbitration agreement in *Hillgen-Ruiz* did not mention any
4   opportunity for parties to appear before a court for any purpose, even to enforce the arbitrator's
5   award. Therefore, the court does not find *Hillgen-Ruiz*'s findings instructive.

6   Cardio asserts that the parties have "expressly agreed" that this court has exclusive
7   jurisdiction to hear and decide Cardio's application for temporary and permanent injunction in this
8   case. Cardio also cites *Hillgen-Ruiz*. *See Hillgen-Ruiz*, 2014 WL 5341676 at *8 (". . . in the
9   absence of an express provision excluding a particular grievance from arbitration, we think only
10  the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.").
11  Counter to Cardio's assertions, however, it is not clear by the language of the consulting agreement
12  that the parties have expressly agreed that this court has exclusive jurisdiction to hear and decide
13  Cardio's application for temporary and permanent injunction.

14  To support its position further, Cardio references a 2007 employment agreement between
15  Jacobs and Cardio, which it believes is still applicable. (*See* doc. # 3-1). Paragraphs 9 through 9.2
16  govern arbitration. Under paragraph 9.2 of the employment agreement the "Employee and
17  Company agree that the Company may seek and obtain otherwise available injunctive relief in
18  Court for any violation of obligations concerning confidential information, trade secrets,
19  solicitation, or other Company policies that cannot adequately be remedied at law or in
20  arbitration." Cardio argues that Jacobs' subsequent change of status from employee to consultant
21  did not nullify or erase his continuing obligations to Cardio under the employment agreement,
22  which stated that Jacobs' obligations would survive and last in perpetuity.

23  Cardio is correct that Jacobs' obligations survive in perpetuity. Cardio is incorrect,
24  however, that the specific provisions of the 2007 employment agreement, such as its arbitration
25  provision, still apply. The arbitration provision of the March 1, 2010, consulting agreement clearly
26  supersedes the arbitration provision in the 2007 employment agreement.[2] The terms of 2007

---

[2] Paragraph 19 of the consulting agreement states, "This Agreement and all attached exhibits set forth the entire understanding and agreement of the Parties and supersedes all prior

**James C. Mahan**
**U.S. District Judge**

- 6 -

1    employment agreement, however, are helpful in interpreting the intent of the parties' 2010
2    consulting agreement.  For reasons discussed below, the court finds that the 2010 consulting
3    agreement is a separate, freestanding document meant to impose different procedures on the parties
4    than the 2007 employment agreement.  Based on the clear differences between the two documents,
5    the court finds that the 2010 consulting agreement does not exempt causes of action seeking
6    injunctive and equitable relief from proceeding to arbitration.  The court will grant defendant
7    Jacobs' motion to dismiss and compel arbitration.

8    First, the 2007 employment agreement, unlike the 2010 consulting agreement, contains
9    language that clearly and unequivocally exempts injunctive relief from being sought through
10   arbitration. For example, the employment agreement contains an entirely separate paragraph titled
11   "Injunctive Relief" that outlines Cardio's right to proceed to court and forego arbitration if seeking
12   injunctive relief.[3]  Further, paragraph 9.2 of the employment agreement, which governs arbitration,
13   repeats that "the Company may seek and obtain otherwise available injunctive relief in Court for
14   any violation concerning confidential information, trade secrets, solicitation, or other Company
15   policies that cannot adequately be remedied at law or in arbitration."  (Doc. # 3-1).  Finally, the
16   opening sentence of the arbitration provision in the 2007 employment agreement exempts "rights
17   the parties may have to seek injunctive relief or specific performance . . . ."  (Doc. # 3-1).

18   Second, though the arbitration provisions from the 2007 employment agreement and the
19   2010 consulting agreement share the *exact same language* regarding the qualifications and
20   appointment of an arbitrator, the applicable rules of arbitration, and what costs and fees a
21   prevailing party is entitled to receive, there is not language instructing that injunctive relief is
22   unequivocally exempted from arbitration.  While the 2007 employment agreement is silent with
23   respect to the particular powers of the arbitrator (and arguably removes injunctive relief from the
24   arbitrator's authority), the 2010 consulting agreement instructs that the arbitrator is vested with the
25   power to grant "any relief authorized by law, including but not limited to, equitable relief,

26   and contemporaneous agreements and understandings, both oral and written, related thereto."
27   (Doc. # 10-1).

28   [3] Paragraph 8 titled "Injunctive Relief" directs that Cardio is entitled to "seek and receive specific performance and temporary, preliminary and permanent injunctive relief . . . from any court of competent jurisdiction [for violations of the agreement]. . . ."  (Doc. # 3-1).

**James C. Mahan**
**U.S. District Judge**

declaratory relief, and damages including punitive damages." (*Compare* doc. # 3-1: ¶¶ 8, 9-9.2 *with* doc. # 10-1: ¶ 21).[4]

Third, though the 2010 consulting agreement does state that "[i]f any judicial proceeding is required to enforce an arbitration ruling or to obtain equitable or injunctive relief, the parties hereby consent to the exclusive jurisdiction and venue of the U.S. District Court for the District of Nevada . . ." this is the one and only reference to court proceedings in the entire consulting agreement. The parties' 2007 employment agreement titled an entire paragraph "Injunctive Relief" and outlined specifically that Cardio had an unequivocal right to proceed directly to the courts not only in that paragraph, but also in a subsection of the arbitration provision (doc. # 3-1: ¶ 9.2). The court does not find that this one mention at the end of the arbitration paragraph allows the parties to skip arbitration and proceed directly to the court on matters of equitable or injunctive relief. At most, this provision may grant the parties the ability to enforce a claim for injunctive or equitable relief *after* the conclusion of arbitration.

Comparing the language of the 2007 employment agreement with the language of the 2010 consulting agreement, construing the consulting agreement's ambiguity against the drafting party, *see In re Kim*, 182 F.3d 926 at *2 (9th Cir. 1999), and keeping in mind the FAA's policy supporting resolution in favor of arbitration, the court finds that the arbitration agreement encompasses the dispute at issue. Accordingly, the court will grant Jacobs' motion to dismiss and compel arbitration.

IV.  **Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant John W. Jacobs's motion to dismiss and compel arbitration (doc. # 24) be, and the same hereby is, GRANTED.

---

[4] Additional drafting differences to demonstrate that the two agreements are meant to outline different terms include that the 2007 employment agreement provides that "the Company shall pay all fees and costs of arbitration" (doc. # 3-1: ¶ 9.1), while the 2010 consulting agreement instructs that "both parties shall equally share the costs of each arbitration proceeding." (Doc. # 10-1: ¶ 21).

James C. Mahan
U.S. District Judge

- 8 -

IT IS FURTHER ORDERED that plaintiff's application for preliminary injunction and memorandum in support (doc. # 2), supplemental motion for preliminary injunction (doc. # 49), and motion for leave to file supplemental motion for preliminary injunction and supporting memorandum (doc. # 55) be, and the same hereby are, DENIED as moot.

IT IS FURTHER ORDERED that defendant's motion to strike plaintiff's supplemental motion for preliminary injunction (doc. # 53) be, and the same hereby is, DENIED as moot. The clerk is instructed to close the case.

DATED February 19, 2015.

_____
UNITED STATES DISTRICT JUDGE